# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES — GENERAL

| | | | |
|---|---|---|---|
| Case No: | CV 99-07654 HLH (VBKx) | Date: | June 9, 2003 |

Title: **TICKETMASTER CORP. V. TICKETS.COM, INC.**

**PRESENT**

HON. **HARRY L. HUPP**, JUDGE

| Carolyn Trump | Cynthia L. Mizell |
|---|---|
| Deputy Clerk | Court Recorder |

| ATTORNEY PRESENT FOR PLAINTIFFS: | ATTORNEY PRESENT FOR DEFENDANTS: |
|---|---|
| Steven E. Sletten (Gibson, Dunn & Crutcher, LLP) | Alfred C. Pfeiffer, Jr. (Bingham McCutchen LLP) |
| Robert E. Cooper | Frank M. Hinman |
| Joshua C. Stokes | |

**THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).**

**PROCEEDINGS:** TICKETS.COM'S MOTION TO RETAX COSTS

ORDER (also, if applicable, findings and memorandum opinion):

ENTERED
CLERK, U.S. DISTRICT COURT
JUN 9 2003
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

Ticket.Com, Inc. (hereafter TX) moves to re-tax costs. The court finds that there is no prevailing party in this litigation; therefore, each party shall bear its own costs.

A brief and condensed version of this history of this case is as follows: The action began with the filing of a complaint by Ticketmaster Corporation (hereafter TM) against TX charging (as a federal claim) copyright infringement and also charging a miscellany of state law claims (including breach of contract, trespass to chattels, and unfair

CV99-7654-HLH
6/9/03
Page Two

competition). The core factual allegation behind all of the claims was that TX was extracting factual data from TM's internet website by using on that website an electronic program called a spider, which combed the interior pages of the website and extracted factual data regarding specific concerts, athletic events, and other public programs, which TX then used in a different format in its own interior web pages, and in which TX allowed the customer to hyper-link to TM's interior web pages to order tickets from TM if the customer so desired. TM sought a preliminary injunction against these practices. TX moved to dismiss, and orally stated to the court (and TM) at that time that it had ceased the hyper-linking to TM interior web pages (but did not abandon its position that it was legally entitled to do what it did). (The hyper-linking ceased in March, 2000, but the use of the spider continued to July, 2001, when it stopped.) TM pursued a preliminary injunction, which was denied, in part because part of the objected to practices had ceased. About this time, the court suggested to the parties that the lawsuit ought to be terminated at this point and urged the parties to seek mediation. At that point TX was willing to mediate, but TM was not. The lawsuit continued. TX filed an anti-trust counterclaim and the lawsuit escalated. A literal fortune was expended by the parties from that point on. It appears from the figures on the cost bills that TM spent most of the money doing discovery in the anti-trust case, and that ~~the~~ over $400,000 in copying charges alone was expended by TM. The lawsuit came to a screeching halt on the cross motions for summary judgment motions decided by the court on March 6 of this year. On TM's motion, summary judgment was granted against TX's anti-trust claims. On TX's motion, summary judgment was granted against TM's copyright and trespass to chattels claims, and denied as to the breach of contract claim (which was later dismissed along with the cross-claims of the parties for unfair competition by reason of lack of federal jurisdiction for these state law claims, there being no federal law claims left to which the state law claims could be supplemental). Judgments were signed carrying these orders into effect. (There is no significance in the fact that separate judgments were signed; they were all a part of the conclusions reached on the March 6 summary

CV99-7654-HLH
6/9/03
Page Three

judgment motions.)  Thus, the lawsuit ended with neither party achieving any affirmative result against the other.

The clerk, in taxing costs, allowed costs to TM on the TX anti-trust claims ($397,787.72) and to TX on the TM claims ($30,027.34). This award necessarily assumes that there were two prevailing parties--TM on the TX claims and TX on the TM claims. The court appreciates the hard work done by the clerk in attempting to sort out allowable costs. However, the court finds that this litigation should be looked at as a whole, and concludes that there was no prevailing party.  In the larger sense, the lawsuit as a whole was a continuation of the vigorous competition between the parties. TM was the party transferring this aspect of the competition into litigation. Its counsel, hugely experienced, must have recognized the well known proposition that when a dominant company in the industry sues a smaller competitor about some business practice or other, it will usually draw an anti-trust counterclaim. So, here. This litigation could probably have been turned off at an early stage and the competition limited to business collisions, but was not, and at least partly because TM was stubborn about attempting to stop business practices that had already stopped, but theoretically could have been started up again. Because this lawsuit as a whole was a part of the business competition between the parties, the court looks at the lawsuit as a whole and not at discrete claims in the lawsuit. The lawsuit was a fizzle for both parties. TM, who started the court aspect of the fight, came away with nothing. TX, whose counterclaim ended up being the expensive part of the litigation fight, ended up accomplishing nothing. Looked at as a whole, neither party prevailed. Each party should bear its own costs.

TM argues that TX made the anti-trust claim the more expensive part of the lawsuit by the broad range of discovery it proposed. However, if TX was to have an anti-trust claim at all, and the relevant market was nationwide but centered in discrete communities each of which had to be examined, broad discovery was necessarily required. However, this was foreseeable when TM made the decision to continue

CV99-7654-HLH
6/9/03
Page Four

with the lawsuit when there was really nothing major to be accomplished from a business competition standpoint. While the court has some astonishment at the copying costs incurred, that does not affect its conclusion that, in fact, there was no prevailing party.

In this situation, the most common result when there is no recovery either on the complaint or counterclaim is that the court requires each party to bear its own costs. (Srybnik 2Cir'56 230 F2d 683; Marcella 2Cir'85; 778 F2d 112; Tunison DCCir'98 162 F3d 1187; Kropp 8Cir'78 601 F2d 1348; All West Pet Supply DCKA'94 153 FRD 667; City of Rome EDPA'99 184 FRD 547.)

Costs are taxed at zero for both parties, the court holding that there is no prevailing party and that each party should bear its own costs. This minute order is the court's order; no more formal document is required.

A:997654.69